Appeal of **CANYON LUMBER COMPANY.** Docket No. 238.

> The Canyon Lumber Company in 1917 owned 50 per cent of the stock of the Johnson-Dean Lumber Company. The remaining stock was owned by the W. W. Johnson Lumber Company. To secure an obligation to the Canyon Lumber Company, the stock owned by the W. W. Johnson Lumber Company was deposited in escrow with a bank in September, 1918. From that time it was not voted by the W. W. Johnson Lumber Company. *Held:* That the corporations were not affiliated during 1917.

Submitted November 24, 1924; decided January 31, 1925.

*W. W. Spauling, Esq.*, for the taxpayer.
*Robert A. Littleton, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before TRAMMELL, TRUSSELL, and LITTLETON.

A stipulation was filed whereby it was agreed that the facts set out in the recommendation of the Committee on Appeals and Review, dated May 22, 1924, were correct, from which the Board makes the following

FINDINGS OF FACT.

The Canyon Lumber Company (hereinafter referred to as the Canyon Company) being in need of working capital arranged with Mr. C. H. Johnson, acting for the W. W. Johnson Lumber Company (hereinafter referred to as the Johnson Company) for the purchase by that company of one-half of the stock of a corporation to be organized to take over the properties then owned by the Canyon Company at Robe, Washington. This corporation was organized in 1908 under the corporate name of the Johnson-Dean Lumber Company (hereinafter referred to as the Dean Company). As an inducement to the Johnson Company to invest in the enterprise, the Canyon Company entered into the following agreement with said company:

> That this company would protect and save the W. W. Johnson Lumber Company from loss on its investment in the stock of the Johnson-Dean Lumber Company and that this guarantee was to be performed by the purchase of such stock by this company from the W. W. Johnson Lumber Company at a price equal to cost plus certain agreed amounts.

That agreement was a material inducement to the Johnson Company and had such obligation not been assumed by the Canyon Company the investment by the Johnson Company in the stock of the Dean Company would not have been made.

The operations of the Dean Company were not profitable, and this caused the Canyon Company to be called upon from time to

time to make advances to or on its account, as is evidenced by debit balances on its books against the Dean Company. The Canyon Company also made advances or loans to C. H. Johnson, the principal stockholder of the Johnson Company.

In 1912 the Dean Company issued and sold its bonds in the amount of $300,000 secured by a mortgage or deed of trust covering its timber holdings, equipment, and mill property. These bonds were secured by the joint and several guarantee of the Canyon Company which was as follows:

For value received the undersigned, W. W. Johnson Lumber Company, of Minneapolis, Minn., and Canyon Lumber Company of Everett, Wash., do hereby jointly and severally guarantee due payment of the principal and interest of the within bond, and do hereby jointly and severally further agree that the undersigned shall in no respect and to no extent be released from the obligation of this guaranty by any act or proceedings taken under or in pursuance of any of the terms or provisions of the collateral mortgage or deed of trust referred to in the within bond, or by any extension of the time of payment of any bond or bonds secured by said mortgage or deed of trust.

The only property owned by the Johnson Company was the stock in the Dean Company. In 1916 the Dean Company defaulted in the payment of the principal of and interest on this bonded indebtedness, and it became necessary for the Canyon Company to advance to the Dean Company a sufficient amount to discharge these obligations. When this default occurred the Johnson Company was under duty to pay one-half of the obligations then maturing, but did not do so for want of funds. Consequently the Canyon Company advanced the entire amount needed for this purpose. At this time (December, 1916) it was apparent that other similar defaults would be made by the Dean Company as the principal of and interest on its bonds matured. Therefore, the Canyon Company sought and obtained in 1917 an additional agreement with Mr. C. H. Johnson which in the stipulation is described as follows:

That the W. W. Johnson Lumber Company would deposit its stock in the Johnson-Dean Lumber Company with a Seattle bank as collateral security that the former company would reimburse this [Canyon] company for one-half of its advances on account of the Johnson-Dean Company and that this [Canyon] company should have the exclusive right at any time to purchase and take over such stock at a price equal to that specified in the original agreement of 1908, above referred to.

The said agreement was made in the summer of 1917 and not later than August of that year. Pursuant thereto the stock in the Dean Company owned by the Johnson Company was delivered by the latter company to the Dexter Horton National Bank of Seattle on September 3, 1918.

Formal delivery of the certificates was not made to the bank at an earlier date on account of the inattention of the officers of the two interested companies and the friendship, confidence, and trust that existed between them.

While this stock was thus on deposit or in escrow with the aforesaid bank and prior to the time it was formally taken over by the Canyon Company in May, 1920, it was not voted by the Johnson Company or by any one in its behalf. In the summer of 1917, as on other occasions before and after that time, C. H. Johnson, acting for the Johnson Company, urged the Canyon Company to purchase

its stock holdings in the Dean Company, and as a result thereof the Canyon Company did purchase the stock in May, 1920.

The certificates representing the stock in the Dean Company owned by the Johnson Company were unassigned when delivered to the Seattle bank. The purposes for which the delivery was made were set forth in the letter of the Johnson Company to the bank as follows:

> We are inclosing herewith certificates No. 11, 12, 13, and 14, being 3,977 shares of the Johnson-Dean Company. These shares, according to my talk with you last spring, are to be held in escrow as a guarantee to the Canyon Lumber Company for their payment of the half interest of the W. W. Johnson Lumber Company on the bonds of the Detroit Trust Company.

An affidavit by the treasurer of the Canyon Company, quoted in the recommendation of the Committee on Appeals and Review, is as follows:

> Supplementing this statement, we will add that for the W. W. Johnson Lumber Company to have voted the stock after the making of the escrow agreement would have been regarded by the parties thereto as inconsistent with that agreement. We refer to the agreement made in August, 1917, between the Canyon Lumber Company and the W. W. Johnson Lumber Company, under which the stock in question was subsequently placed in escrow.

With the exception of the joint and several guarantee, none of the agreements made between the Canyon Company and the Johnson Company were reduced to writing.

### DECISION.

The determination by the Commissioner of a deficiency in the amount of $18,500.96 for 1917 is approved.

### OPINION.

TRAMMELL: The question to be determined in this appeal is whether the Canyon Co. controlled through closely affiliated interests or by a nominee or nominees a sufficient amount of the stock of the Dean Co. which it did not own to entitle the two corporations to file a consolidated return from and after the date of the agreement with reference to the deposit in escrow of the stock of the Johnson-Dean Co. by the Johnson Co. The agreement was not in writing and the date thereof has not been shown more definitely than that it was some time during the month of August, 1917. The taxpayer contended that it controlled, within the meaning of the statute, the stock owned by the Johnson Co., which amounted to 50 per cent of the stock issued and outstanding, and that such such control coupled with the direct ownership by taxpayer of the other 50 per cent of the stock amounted to an ownership and control of all the stock of the Dean Co. It was contended that the control referred to in the statute meant an actual control of stock whether it was exercised through means which were legally enforceable or otherwise.

The Commissioner contended that the expression " controlled through closely affiliated interests " mentioned in the statute meant a control which was exercised through legally enforceable means or a legal control as distinguished from an actual control of stock. The control, however, referred to in the statute, whether it be legal or otherwise, means control of the voting rights of stock.

The only statutory provision for filing consolidated returns for 1917 is contained in section 1331 of the Revenue Act of 1921 which was declaratory of the provisions of Title II of the Revenue Act of 1917, the pertinent portion of which is as follows:

For the purpose of this section a corporation or partnership was affiliated with one or more corporations or partnerships (1) when such corporation or partnership owned directly or controlled through closely affiliated interests or by a nominee or nominees all or substantially all the stock of the other or others.

The recommendation of the Committee on Appeals and Review, which commingles contentions, conclusions and opinions of the taxpayer and argument with the facts, contains the following statement:

It is further stated that " while this stock was thus on deposit or in escrow " with the aforesaid bank and prior to the time it was formally taken over by Co. 1 (the Canyon Company) in May, 1920, it was not voted by Co. 3 (the Johnson Company) or by any one in its behalf.

The recommendation of the Committee also contains the following:

It is contended that because of the agreements and other facts above stated Co. 1 (Canyon Company) acquired control of such stock not later than the summer of 1917; that knowing this fact no objection was made by any interested party to the assumption by this company (Canyon Company) in 1917 of complete control over such stock and the affairs of Co. 2 (Dean Company).

The above statement is, as it purports to be, only a contention and is not stated as a fact. It is not stated as a fact that the Canyon Company had or exercised any control over the stock of the Dean Company owned by the Johnson Company and no facts have been shown which would warrant the conclusion that it did so during the period involved in this appeal. The quotation from an affidavit by the treasurer of the Canyon Company contained in the recommendation of the Committee on Appeals and Review, which is incorporated in the agreed statement of facts, that it would have been regarded by the parties as inconsistent with the agreement for the Johnson Company to have voted such stock, was merely his conclusion from the agreements or his own opinion as to the effect thereof and can not be accepted as a fact in this appeal. On the other hand, the statement appears to be contrary to the statement of fact that the stock was not voted from the time it was deposited in escrow. There appears nothing in the agreement which would warrant the conclusion that it would have been inconsistent with the agreement of the parties for the Johnson Company to have voted the Dean stock prior to the date it was deposited in escrow. No facts have been produced to show that the Canyon Company exercised, through closely affiliated interests or otherwise, any influence of any kind or restrained the Johnson Company in any way in the voting of the Dean Company stock during 1917. The only positive fact shown with respect to the voting of such stock is that the Johnson Company did not vote it from the time that it was on deposit or in escrow. It is also in evidence that it was not put on deposit or in escrow until September, 1918.

For the foregoing reasons, it is the opinion of the Board that the Canyon Company and the Dean Company were not affiliated during 1917 within the meaning of the statute and should not, therefore, be required or permitted to file a consolidated return.